USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/22/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                         :
GERDAU AMERISTEEL US INC.,         :
                               Plaintiff,    :
                                                         :    13 Civ. 07169 (LGS)
                    -against-          :
                                                           :    OPINION AND ORDER
AMERON INTERNATIONAL CORPORATION, :
*et al.*,                                                      :
                               Defendants. :
                                                         :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Gerdau Ameristeel US Inc. brings this action against Defendants Ameron International Corp., Mitsui & Co. and Tokyo Steel Manufacturing Co., Ltd. for breach of contract and declaratory judgment. Defendants in turn assert counterclaims against Plaintiff for breach of contract and declaratory judgment. The dispute arises from Plaintiff's $165 million purchase from Defendants of all of the shares of TAMCO (the "Company"), the operator of a steel mill located in Rancho Cucamonga, California. Before the Court is Plaintiff's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the counterclaim for breach of contract. For the reasons discussed below, Plaintiff's motion is granted.

    **I.**    **Background**

        **A. Procedural History**

      On October 10, 2013, Plaintiff filed its Complaint in this case, alleging that Defendants falsely represented that the Company was in compliance with environmental laws and had all necessary permits. Plaintiffs further claim that Defendants breached their obligation to indemnify Plaintiff for its losses from Defendants' misrepresentations. On December 5, 2013, Defendants filed their Answer, which asserted a counterclaim against Plaintiff alleging that by bringing their

breach of contract claim, Plaintiff breached its covenants not to sue based on released claims.  On January 27, 2014, Plaintiff filed its motion to dismiss this counterclaim.

**B. Facts**

All contract language is taken directly from the agreements at issue.  All other facts are taken from the Answer and, as required on this motion, assumed to be true.

On March 15, 2010, Plaintiff and Defendants entered into a confidentiality agreement regarding Plaintiff's offer to purchase all of the outstanding shares of TAMCO from Defendants.  Plaintiff conducted due diligence regarding this potential purchase, including environmental due diligence.  Plaintiff identified some environmental issues and discussed them with Defendants.  The parties then agreed to reduce the purchase price from approximately $195 million to $165 million.

On September 14, 2010, Plaintiff and Defendants executed the Stock Purchase Agreement ("SPA").  Article IV of the SPA contains Defendants' representations and warranties to Plaintiff, the Buyer, including that (1) "the Company holds all Permits necessary for the conduct of the Company's business"; (2) "the Company is in compliance with all applicable laws, rules and regulations"; and (3) "the Company is in material compliance with applicable Environmental Laws."

The above sellers' representations were required to "be true and correct at and as of the Closing Date," pursuant to §8.1 of the SPA.  Defendants were further required "as of the Closing Date" to "furnish [Plaintiff] with a certificate to evidence compliance with" § 8.1., pursuant to § 8.4 of the SPA.  As well, § 9.2 of the SPA provides that the above "representations and warranties . . . shall terminate and expire on the eighteen-month anniversary of the Closing Date."

The SPA also contains an indemnification provision in Article IX, which provides, in part, that Defendants "shall indemnify and hold harmless [Plaintiff] from and against any and all . . . 'Damages'[] incurred by [Plaintiff] in connection with or arising out of or resulting from [] any breach by [Defendants] of [] any representation or warranty . . . contained in Article IV."

Pursuant to § 6.2 of the SPA, Plaintiff had the right to continue its due diligence between the execution and the closing of the SPA, which Plaintiff did.  Pursuant to § 6.5 of the SPA, Plaintiff had the right to terminate the SPA before closing if it discovered that Defendants had materially breached any representation, warranty or covenant in the SPA.  Yet, despite Plaintiff's knowledge of potential environmental violations at TAMCO's Rancho Cucamonga, California facility, Plaintiff chose to close on the SPA.

The closing occurred on October 21, 2010, and effected Plaintiff's purchase from Defendants of all of the shares of the Company.  Section 3.2(i) of the SPA requires Plaintiff and Defendants to execute a mutual general release of claims at closing ("Release").

In § 2.1 of the Release, Plaintiff releases Defendants from:

> any and all claims, demands, suits, proceedings, causes of action, orders, obligations, contracts, agreements, covenants, promises, debts, liabilities, losses, costs, expenses, damages, judgments, liens, penalties, and fines whatsoever, whether known or unknown, suspected or unsuspected, both at law and in equity, *for all acts, omissions or liabilities arising or occurring prior to the Closing Date* and solely to the extent involving the Company, which [Plaintiff] now has or may hereafter have against [Defendants].

In § 2.2 of the Release, Plaintiff "irrevocably covenants to refrain from, directly or indirectly, asserting any claim or demand, or commencing, instituting or causing to be commenced, any proceeding of any kind against [Defendants]" based on any claims released by Plaintiff under § 2.1.  Defendants allege as their counterclaim that Plaintiff breached this provision.

At the time of closing on the SPA, pursuant to an agreement between the parties ("Escrow Agreement"), Plaintiff deposited $10 million in an escrow account, of which approximately $7 million remains.  Under the Escrow Agreement, all funds, less any amounted segregated by the escrow agent, were to be distributed to Defendants on April 21, 2012.  Funds were to be segregated by the escrow agent if Plaintiff notified the agent of a claim for indemnification under the SPA with a good-faith estimate of the amount.  On April 16, 2012, Plaintiff notified the agent of a claim for indemnification in an amount exceeding $11.7 million.

## II. Standard of Review

### A. Motion to Dismiss

#### i. Generally

Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint.  *See* Fed. R. Civ. P. 12(b); *MTV Networks v. Curry*, 867 F. Supp. 202, 203 (S.D.N.Y. 1994).

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *See Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013).   The Court may consider "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted).

### ii. Breach of Contract Standard

In reviewing a motion to dismiss a breach of contract claim pursuant to Rule 12(b)(6), the Court may interpret a contract properly before it and should "strive to resolve any contractual ambiguities in [the non-moving party's] favor." *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). However, the court is "not constrained to accept the allegations of the [pleading] in respect of the construction of the [contract]." *Id.*

A court may dismiss a claim for breach of contract on a Rule 12(b)(6) motion where the contract is clear and unambiguous. *See Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999). However, "if a contract is ambiguous as applied to a particular set of facts, a court

has insufficient data to dismiss a complaint for failure to state claim." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012).

### B. Contract Interpretation

"When interpreting a contract [under New York law],[1] the intention of the parties should control, and the best evidence of intent is the contract itself." *Gary Friedrich Enter., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) (alteration in original) (internal quotation marks omitted). The Court must give "all words and phrases . . . their plain meaning" and "not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole." *Id.* (alteration in original) (internal quotation marks omitted).

"Under New York law, all writings forming part of a single transaction are to be read together." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998). Likewise, documents that are "closely integrated and nearly contemporaneous" should "be construed together." *Id.* (internal quotation marks omitted).

"It is well settled that [t]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (alteration in original) (internal quotation marks omitted). "Whether a contract is ambiguous is a question of law for the court to decide." *Bayerische*, 692 F.3d at 53. "The language of a contract is not made ambiguous simply because the parties urge different interpretations." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

"Contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is

---

[1] Section 10.4 of the SPA and § 3.3 of the Release provide that they are to be construed and interpreted in accordance with New York law.

no reasonable basis for a difference of opinion." *Bayerische*, 692 F.3d at 53 (alteration in original) (internal quotation marks omitted). "By contrast, ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (internal quotation marks omitted).

**III.   Discussion**

Plaintiff moves to dismiss Defendants' counterclaim, which alleges that Plaintiff breached its agreement not to sue based on any released claims. The Release covers only pre-closing claims. Plaintiffs' claims arose at and after the Closing. Accordingly, this motion is granted, and Defendants' counterclaim is dismissed based on the plain language of the Release and the SPA.

The plain language of Article IV of the SPA shows that Defendants represented, subject to some caveats, that the Company (1) held all necessary permits; (2) was in compliance with all applicable laws, rules and regulations; and (3) was in material compliance with applicable environmental laws. The plain language of §§ 8.1 and 9.2 of the SPA shows that Defendants made these representations as of the closing of the SPA and for eighteen months following. Additionally, the plain language of Article IX of the SPA shows that Defendants agreed to indemnify Plaintiff from all damages incurred in connection with Defendants' breach of the representations in Article IV.

Clauses providing for the survival of representations and warranties are standard in stock purchase agreements. *See* Alan S. Gutterman, 3 Business Transactions Solutions § 38:74 (2014). These survival provisions limit the time period during which an actionable breach can occur or be discovered. *See W. Filter Corp. v. Argan, Inc.*, 540 F. 3d 947, 952-54 (9th Cir. 2008).

Section 2.1 of the Release expressly limits the Release to claims for "acts, omissions or liabilities arising or occurring prior to" the closing of the SPA.  A corollary is that the Release does not include claims for acts, omissions or liabilities arising or occurring on or after the closing.  Plaintiff's breach of contract claim at issue arose at the closing, as it is based on an alleged breach of the representations and the indemnity provision contained in the SPA.

Defendants argue that they did not make separate representations at the Closing, but merely attested to the truthfulness of the representations previously made.  This interpretation of the contract would render superfluous and meaningless § 8.1, which required the sellers' representations to be "true and correct at and as of the Closing Date," and § 9.2, by which the representations terminated eighteen months after the Closing Date.  Defendants had already attested to the truth of the representations when they were made upon the signing of the SPA.  There was no need to attest again to their truth or for them to survive and then expire, unless those events had some legal significance.

A representing party may be sued for breach of a representation after closing if the representation "provide[s] that the situation as represented is true at signing and 'at Closing, will be true.'"  Lou R. Kling & Eileen T. Nugent, Negotiated Acquisitions of Companies, Subsidiaries and Divisions, § 14.02[6] (2014).  A contract should not be interpreted so as to render a clause "superfluous or meaningless." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).  Instead, it should be interpreted to "give[] meaning to every provision of the contract." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008).

Defendants further argue that the Release can be harmonized with the indemnification provision of the SPA by reading the Release to cover all claims relating to pre-closing conduct involving the Company and reading the indemnification provision to cover all pre-closing

conduct that does not involve the Company.  This interpretation fails.  First, the Company is the subject matter of the transaction between the parties; therefore, reading the indemnification provision as applying only to other subject matter is nonsensical.  Moreover, Defendants do not address how this interpretation keeps the representations in Article IV of the SPA from being rendered meaningless, since these representations clearly concern the Company.

Based on the plain language of the SPA and the Release, it is implausible that the parties intended to release Defendants from their indemnification obligations to Plaintiff for breach of the representations made in the SPA.  Therefore, Defendants' counterclaim for breach of contract is dismissed as a matter of law.

**IV.   Conclusion**

For the reasons discussed above, Plaintiff's motion to dismiss Defendants' counterclaim for breach of contract is GRANTED.

The Clerk of Court is directed to close the motion at docket number 21.

SO ORDERED.

Dated: July 22, 2014
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　LORNA G. SCHOFIELD
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE